UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-05564-WLH-ADS | Date | September 30, 2026 |
| Title | ***Celerino Conejo-Gonzalez v. DHS et al.*** | | |

| | |
|---|---|
| Present: The Honorable | WESLEY L. HSU, United States District Judge |

| | |
|---|---|
| Claudia Garcia-Marquez | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings: (IN CHAMBERS) ORDER RE EMERGENCY REQUEST FOR A TEMPORARY RESTRAINING ORDER [16]**

The Court is in receipt of Petitioner Celerino Conejo-Gonzalez's *ex parte* Emergency Request for a Temporary Restraining Order (the "Request"). (Request, Dkt. No. 16). For the reasons set forth below, the Court **GRANTS** Petitioner's Request.

## I. BACKGROUND

### A. Procedural Background

On September 22, 2026, Petitioner, proceeding *pro se* in this action, filed a petition for writ of habeas corpus seeking Petitioner's immediate release as well as a Motion for Temporary Restraining Order. (Pet., Dkt. No. 1; Mot. for TRO, Dkt. No. 2). That same day, the Court entered General Order 26-05 on the docket. (General Order 26-05 & Briefing Sched, Dkt. No. 6). On September 24, 2026, the Court denied the Motion for a Temporary Restraining Order without prejudice because there was no evidence in the form of testimony under penalty of perjury that the Court could consider in deciding the Motion. (Order re Mot. for TRO, Dkt. No. 8).

On September 28, 2026, Petitioner Celerino Conejo-Gonzalez's spouse and next friend filed Emergency for Two-Day Notice re ICE's Intent to Transfer Mr. Conejo Out

of Central District and Remove Him from U.S., indicating that Petitioner had been notified on September 25, 2026, of his forthcoming September 30, 2026, deportation to Mexico. (Emergency Two-Day Notice, Dkt. No. 10). By the date of that filing, September 28, 2026, two days before the removal was set to take place, Respondent in this matter had not yet filed a Notice of Removal with this Court, which violated this Court's General Order 26-05. (General Order 26-05 & Briefing Sched, Dkt. No. 6). The Court issued an Order to Show Cause for Respondent to show cause in writing as to whether Respondent indeed intended to remove Petitioner. (OSC, Dkt. No. 11). One day later, on September 29, 2026, Respondent filed its Notice of Intended Removal of Petitioner, notifying the Court that Respondent intends to remove Petitioner on October 2, 2026, to Mexico. (Not. of Intended Removal of Pet., Dkt. No. 12 at 2, Ex. 1). That same day, on September 29, 2026, Respondents filed their Response to the Petition, which addresses the merits of Petitioner's Request because Petitioner's arguments in the later-filed Request are substantively the same as in the Petition and the earlier, procedurally deficient Motion for TRO. (Response, Dkt. No. 14).

On September 29, 2026, Petitioner filed the instant Request, correcting the deficiency identified in the Court's Order re Motion for Temporary Restraining Order, by attaching a signature, affirming that the affidavit and exhibits provided were submitted under penalty of perjury. (Request at 7[1]).

**B. Factual Background**

Petitioner (A# 205-719-979) applied for a U-Visa as a U-2 derivative spouse. (*Id.* at 2). On August 24, 2026, USCIS issued a "*Bona Fide* Determination Notice" regarding the U-visa claim. (*Id.*). On either June 25, 2026, or June 26, 2026,[2] at approximately

[1] The Court uses the ECF pagination herein when referring to page numbers.
[2] Two different dates are provided on page 2 and 3 of the Request, though this discrepancy is not material to the Court's ruling.

6:30 a.m., while driving to a bakery to pick up breakfast for his family, Petitioner was stopped by masked ICE officers in unmarked vehicles surrounding his vehicle and ordering him to get out of the car. (*Id.*). An officer asked Petitioner for his identification and stated that they were looking for illegals, according to Petitioner. (*Id.*). ICE handcuffed Petitioner and transferred him to the Adelanto ICE Processing Center. (*Id.*).

In their Response to the Petition, Respondents state that, "[o]n August 30, 2013, an Immigration Judge ordered Petitioner removed from the United States," and that he "was removed on September 4, 2013, but subsequently reentered at an unknown date." (Response, Dkt. No. 14 at 2). The day that Petitioner was arrested, June 25, 2026, according to Respondents, "Petitioner was issued a Notice of Intent/Decision to Reinstate Prior [Removal] Order and Warrant of Removal/Deportation." (*Id.*, Exs. 2-3).

On September 18, 2026, United States Customs and Immigration Services ("USCIS") denied Petitioner's Form I-918A based on an alleged failure to provide fingerprints. (Request at 3). Petitioner alleges that this denial was an error because, on August 28, 2026, Petitioner informed USCIS of the difficulty of providing fingerprints due to his unlawful detention, and on September 15, 2026, USCIS did in fact receive his fingerprints as taken by a DHS Officer at Adelanto. (*Id.*). Consequently, Petitioner contends that he did not abandon his application as claimed by USCIS's denial of his application. (*Id.*). Petitioner has filed a limited motion to reopen the denial of his U-Visa. (*Id.*). Petitioner also alleges that ICE has since removed him from its Online Detainee Locator System ("ODLS"). (*Id.*). Moreover, during his detention, Petitioner alleges that in connection with a fracture to his right ankle that he sustained in a work-related accident, he has been denied adequate treatment at Adelanto Detention Center and has missed several medical appointments due to the detention. (*Id.* at 3).

Respondents concede that "Petitioner appears to be entitled to request and receive a bond hearing," but argue that "Petitioner is properly detained pending such potential bond proceedings because this is the Petitioner's first detention." (Response at 2). Respondents argue that Petitioner should exhaust his available administrative remedies before seeking habeas relief with this Court, which according to Respondents, is a bond hearing that can be sought "in the Immigration Court after 180 days of total detention time." (*Id*. at 3).[3]

Petitioner requests that this Court issue a TRO, **"**preventing his removal, deportation or transfer outside of the Central District of California and ordering his immediate release from ICE detention." (Request at 7).

## II. DISCUSSION

In determining whether to issue a preliminary injunction, courts apply the four *Winter* factors (the "*Winter* Factors"): (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The Ninth Circuit uses a "'sliding scale' approach to preliminary injunctions" such that the "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All for the Wild*

[3] A court has wide discretion to "waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)); *see Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (emphasizing that while administrative exhaustion is not a jurisdictional prerequisite, it is required as "[a]s a prudential matter"). Aside from the serious due process issues posed by forcing Petitioner to wait 180 days of detention to contest a potentially unlawful arrest and detention, as of the date of this Order, 180 days have not passed since Petitioner was arrested in June 2026, and it is now impossible for Petitioner to exhaust his administrative remedies, given Respondent has noticed his removal for October 2, 2026, in two days. Administrative exhaustion, therefore, is futile and is hereby waived.

*Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20). A preliminary injunction, therefore, is appropriate where the petitioner has raised "serious questions going to the merits" and the balance of hardships tips heavily in his favor. *Id*. For the reasons explained herein, the Court **GRANTS** the Motion.

*1. Likelihood of Success on the Merits*

The first *Winter* factor "'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Petitioner argues that he is likely to success on the merits of his claim that Respondents have violated his right to procedural due process. (Mot. at 4). In evaluating similar due process claims, courts employ the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts evaluate (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguard"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Court addresses these three factors in turn.

a. <u>Private Interest</u>

The Fifth Amendment protects all persons from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of [removal] proceedings."). Petitioner argues that ICE has "deprived him of physical liberty and has

now hidden his whereabouts from the public by taking him off of the ODLS," and that he "faces the loss of his U-visa status, because, on August 24, 2026, USCIS issued a '*Bona Fide* Determination Notice' regarding that U-visa claim," and Petitioner's application was denied because of his untimely fingerprints as a result of his detention. (Request at 4). The Court agrees that Petitioner's detention violates his constitutional rights, but for a different reason: Petitioner was unlawfully detained without a warrant and by unmasked ICE officers for no apparent reason. (*Id.*).

Respondents argue that the Petition fails because the arrest was his "first encounter" with law enforcement since his re-entry, so they had the power to choose to detain him. While the Court understands Respondents' attempt to distinguish this Petitioner from the numerous other cases where a non-citizen is permitted to remain in the United States after encountering immigration agents, this argument misses the point: here, if the *encounter itself* violated Petitioner's constitutional rights, the officers had no right to detain him, with or without legal status.

The only legal citation provided by Respondents in making this argument, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), does not support Respondents' argument. Instead, like the argument itself, *Rodriguez Vazquez* is besides the point; that case stands only for the general proposition that noncitizens who, like Petitioner, are "present without admission [and] apprehended in the interior of the United States" may be subject to discretionary detention under Section 1226(a) (as opposed to mandatory detention), and pursuant to Section 1226(a), Petitioner is entitled to a bond hearing before an immigration judge. *See C.V. v. Andrews*, 2026 WL 2365350, at *2 (E.D. Cal. Aug. 14, 2026) (collecting cases consistent with this interpretation of *Rodriguez Vazquez*). The issue addressed by *Rodriguez Vazquez* is immaterial here, since Respondents admit that Petitioner is entitled to a bond hearing under Section 1226(a).

(Response at 2). The Court does order such a hearing before any re-detention or other restriction may be applied. But a future detention hearing cannot cure the illegal stop and resulting detention here.

As the Court finds Respondents' arguments to be without legal support, including its argument that detention is lawful here because it is Petitioner's first encounter with ICE, the Court finds Petitioner has demonstrated a strong likelihood of success on the merits of this claim. As the degree of deprivation of constitutional rights appears high here, the first *Mathews* factor weighs in Petitioner's favor.[4]

b. Risk of Erroneous Deprivation

Where an individual has not received a bond or custody redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (alteration in original). Immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. Here, Petitioner states that ICE took him "into immigration custody without notice or warning, without providing him with any opportunity to contest his detention before a neutral decision-maker." (Request at 5). Even Respondents agree that "Petitioner appears to be entitled to request and receive a bond hearing." (Response at 2).[5] As Petitioner was not

[4] Although the Court need not reach the issue for purposes of resolving this temporary restraining order, the Court notes that taking Petitioner into custody illegally on the one hand and then on the other hand denying Petitioner's visa application because it had been "abandoned" appears on its face to raise serious due process questions.

[5] Respondents also argue that, because Petitioner has an adequate remedy, by their measure, of a bond hearing in Immigration Court after 180 days of total detention time, he must exhaust his administrative remedies before seeking relief in this Court. (Response at 3). This argument obviously fails in the present circumstances where Respondents have noticed Petitioner's removal for two days from this Order, in which time he will not be able to exhaust his administrative remedies—even if he were required to do so. The argument also ignores the constitutional violation that occurred when Petitioner was taken into custody in the first place; Respondents cannot require Petitioner to wait 180 days prior to challenging his unconstitutional *arrest*, which is not exclusively in the purview of the Immigration Judge.

provided notice and a pre-deprivation hearing to evaluate whether his detention was warranted based on flight risk or danger to community, the Court finds that the risk of erroneous deprivation is high. *Lara v. Noem*, 2025 WL 3255001, at *5 (C.D. Cal. Nov. 19, 2025) (citing *M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. July 17, 2025) ("[A]bsent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process.")). Thus, the second *Mathews* factor also weighs in Petitioner's favor.

c. <u>Respondents' Interest</u>

Finally, Respondents' interest in detaining Petitioner without first providing notice and a custody hearing is minimal. Petitioner asserts that there is no "effort nor cost [to the Government] required to release the Petitioner and allow him to process his U-visa and seek his own medical care." (Request at 5). In Respondents' response to the Petition, Respondents do not identify any "legitimate interest that would support detaining [Petitioner] without a pre-detention hearing." *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025); (see Response). Nor do Respondents claim that providing a pre-detention hearing would be an administrative or financial burden. *Id*. Thus, the third *Mathews* factor also weighs in Petitioner's favor.

In conclusion, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. Thus, Petitioner has shown a likelihood of success on the merits of his due process claim.

*2. Irreparable Harm*

A party seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22; *see also All. For the Wild Rockies*, 632 F.3d at 1131 (explaining that plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction). Courts "presume that a constitutional violation causes a preliminary

injunction movant irreparable harm." *Baird*, 81 F.4th at 1046 (emphasis in original). Without a TRO, Respondents may either indefinitely detain Petitioner, unlawfully, or remove Petitioner from the United States within the next two days, based upon an initially defective detention, depriving him of his ability to obtain his U-Visa via that unlawful detention and without affording him proper process regarding his removal. The Court finds that Petitioner has established irreparable harm, and thus the second *Winter* factor also weighs in favor of temporary injunctive relief.

*3. Balance of Equities and the Public Interest*

For a court to issue a preliminary injunction requested by a movant, the "balance of equities must tip[ ] in his favor." *Baird*, 81 F.4th at 1040. Courts presume that "preventing a constitutional violation is in the public interest." *Id.* at 1046. "[T]he public has a strong interest in upholding procedural protections against unlawful detention," as well as "in the efficient allocation of the government's fiscal resources." *Vargas v. Jennings*, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Finding that there is a high likelihood of success on the merits of Petitioner's due process claim as a result of his unlawful detention, granting a TRO here would be in the public interest.

Furthermore, the balance of hardships tips strongly in Petitioner's favor as he would suffer great hardship if the Court were to deny his TRO. At most, Respondents' injury would be a short delay in re-detaining and removing Petitioner, and they "cannot reasonably assert" they are "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Servs.*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, the last two *Winter* factors also weigh in favor of an injunction.

Having found that all *Winter* factors weigh in favor of injunctive relief, the Court **GRANTS** Petitioner's TRO.

## III. CONCLUSION

Accordingly, the Court **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately (meaning forthwith) release Petitioner (A# 205-719-979) from detention. Respondents must file a Notice of Release within two (2) days of this Order confirming Petitioner has been released from custody;
2. Respondents are **ENJOINED** from re-detaining Petitioner, or placing any new restriction on Petitioner's liberty such as electronic monitoring, unless he is provided with an individualized bond hearing with reasonable notice and opportunity to prepare;
3. Petitioner is not required to secure a bond, as the government has provided no evidence of costs it will incur in releasing Petitioner. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003);
4. Respondents are **ENJOINED** from relocating Petitioner outside of the Central District of California pending final resolution of this matter;
5. The Court sets a Preliminary Injunction hearing in the matter for October 14, 2026, at 1:00 p.m. Petitioner may submit supplemental materials in support of the preliminary injunction by October 5, 2026, and Respondents may submit supplemental materials by October 9, 2026; and
6. Respondents are **ORDERED** to personally serve a copy of this Order on Petitioner prior to his release from custody.

**IT IS SO ORDERED.**